374 A.2d 547.

PHILIP G. JUDGE *et al. vs.* GRACE J. JANICKI, *Executrix.*

JUNE 9, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is an appeal from a Superior Court judgment ordering that the purported last will and testament of Madeleine N. Judge, dated January 16, 1967, not be admitted to probate. Proponent of the will, and the appellant herein, Grace J. Janicki, was named executrix of the will. She offered, and the Probate Court for the City of Cranston accepted, the will for probate. Certain members of the Judge family appealed to the Superior Court, where the case was tried before a jury on three issues: (1) whether the statutory requisites for execution were met; (2) whether the will was procured by undue influence; and (3) whether Madeleine Judge had testamentary capacity. The jury returned a general verdict against the will, and the proponent moved for a new trial, which the trial justice denied on the ground that Madeleine Judge lacked testamentary capacity. The proponent then appealed to this court, claiming that the trial justice erred by failing to give certain requested instructions,

denying the motion for a new trial, and neglecting to take remedial action when confronted with an attorney's alleged breach of the Code of Professional Responsibility. We shall refer to the decedent as Madeleine and to various members of her family by their first names as necessary.

In October 1966, Grace J. Janicki spoke with a Providence attorney concerning the possibility of bringing her mother, Madeleine, in to talk with him about drawing a will and estate plan. The appointment was made, and Grace brought her mother, who was in her eighties and residing with Grace, to the attorney's office. He and Madeleine discussed her assets and a possible estate plan, albeit with some difficulty at first because she had a hearing problem. On January 16, 1967, the attorney, accompanied by two secretaries from his office, went to Grace's house so that Madeleine could execute her will. When they arrived, Madeleine and Grace greeted them, and the five "exchanged pleasantries" in the living room. The attorney testified that he and Madeleine then adjourned to the dining room, while Grace "busied herself in the kitchen" and the two secretaries "continued to look around the room, out the windows and at the grounds." According to the attorney, he went over the will "[s]ubstantially line by line" with Madeleine, detailing every section of it. She asked some questions about the meaning of legal words, "per stirpes and administrator, c.t.a., [and] things like that," and, in response to her concern over the liquidity of her estate, the attorney explained how the plan he had drafted would work. Despite Madeleine's hearing problem, he felt he had no trouble communicating with her because he faced her directly, kept his voice in "mid-range," and spoke slowly. Indeed, he thought she had less trouble understanding him than during the October meeting. It was his conclusion that although Madeleine was "feeble," she "was alert without

any question" and understood "who the members of her family were, the objects of her estate." By his estimate, the time spent with Madeleine that afternoon was over an hour.

One of the secretaries who witnessed the will also testified. She remembered Madeleine as "a nice little old lady" who knew what she was saying and signing. While the the secretary did not recall what the attorney and Madeleine talked about, she knew it concerned the will "[b]ecase that's why we were there." The secretary was unsure, though, how long Madeleine and the attorney discussed the will, estimating at first that 15 to 20 minutes elapsed, but then deciding it must have been longer.

The first error claimed on appeal is that the trial justice erroneously declined to give certain instructions. These were requests that the jury be told (1) that "[n]o inference of incapacity can be drawn solely from the fact that the testator is old"; and (2) that "[d]eafness alone does not amount to incapacity." Grace concedes that there was nothing wrong with the instructions insofar as they went, but argues that failure to delineate what aspects of the evidence in and of themselves would *not* constitute incapacity could have led the jury astray. While we have said that no presumption of incapacity may be drawn simply because of old age, *Hollingworth* v. *Kresge,* 48 R.I. 341, 137 A. 908 (1927), this does not mean inferences are impermissible. To the contrary, inferences unfavorable to the proponent's position may be drawn from the testatrix' old age, deafness, or other infirmities when considered with other evidence. Here the trial justice admonished the jury to consider *all* the testimony and reasonable inferences therefrom. He correctly emphasized the standard for testamentary capacity, that is, knowledge of one's assets and the natural objects of one's bounty, and charged the jury in substantially the manner we approved in *Tavernier* v. *Mc-*

*Burney,* 112 R.I. 159, 308 A.2d 518 (1973). The trial justice does not have to single out and read a litany of all those afflictions which singly or jointly do *not* constitute lack of capacity. We, therefore, find no fault with the trial justice's refusal to give the requested instructions.

The second error claimed is the trial justice's denial of the motion for a new trial. In his ruling, the trial justice considered the attorney's testimony "critical," but found "one unfortunate part." That was the attorney's assertion that he had spent some time with Madeleine going over the will line by line. The trial justice rejected this testimony because, based on the accounts of other witnesses, one had to write down nearly everything in order to communicate with Madeleine. Furthermore, the secretary's testimony as to the time spent discussing the will contradicted her employer's, and the trial justice found that, given the length of the will and Madeleine's deafness, it was improbable that the attorney could have discussed very much with Madeleine "during a fifteen or twenty minute period." In short, the trial justice, assessing the witnesses' credibility, rejected the attorney's account for other testimony which to him rang truer. Secondly, the trial justice thought it was unclear that Madeleine had asked any questions "really apropos to the subject at hand."

The argument presented to us is that the trial justice misconceived or overlooked material evidence because the attorney's "line by line" language was a figure of speech and Madeleine's questions about the abstrusities of legal jargon were most certainly germane. Our review of the trial justice's ruling indicates to us that the trial justice simply found that the attorney's testimony, taken in light of the secretary's testimony as "to what precisely happened at the time of the execution of the will, was not persuasive on the issue of mental capacity." We also

realize, however, that the trial justice did not specifically reject the testimony concerning Madeleine's questioning of legal terms, but instead found the inquiries not "apropos." Because he may have overlooked or misconceived this evidence, we will give Grace the benefit of the doubt and apply the so-called appellate rule of review to a trial justice's disposition of a motion for new trial.

The question before us, then, as we view the evidence in the light most favorable to the prevailing party, is whether there is any competent evidence which will support the verdict. *Morinville* v. *Morinville,* 116 R.I. 507, 359 A.2d 48 (1976). While Grace has unfailingly pointed us toward that evidence which suggests that Madeleine did have testamentary capacity, there is without doubt more than enough evidence to substantiate the verdict on the ground of a lack of testamentary capacity. Madeleine's son Philip recounted that when he visited his mother shortly before Christmas 1966, she confused him with his brother Albert who, in turn, reported similar mix-ups. Albert also testified that around Christmas 1966 Madeleine did not know the location of a house she had recently purchased which was across the street from Grace's home. Additionally, as she berated Albert, whom she thought was Philip, about Albert's supposed failure to visit, she spoke of her deceased husband as though he were still alive. Perhaps most persuasive of all, though, was the testimony of Madeleine's grandson, Albert Leathers, who stood to gain one-seventh of Madeleine's estate under this will and virtually nothing under an earlier one. He testified that between August 1966 and January 1967 his grandmother had "obvious" lapses of memory and that these had become more pronounced when he saw her in January. But of more import was his testimony concerning incidents Madeleine had recounted to him in early January 1967. For example, she said that in the

middle of one night she had gotten up, dressed and started out the door when Grace caught her. Madeleine told her grandson she hadn't known what she was doing.

All of these events occurred shortly before Madeleine signed the contested document. We have no doubt that this evidence and reasonable inferences to be drawn therefrom support the jury's verdict. *See Apollonio* v. *Kenyon*, 101 R.I. 578, 225 A.2d 778 (1967). Accordingly, we find the *Morinville* standard satisfied.

The third argument presented to us concerns those provisions of the Code of Professional Responsibility (the code), which prohibit a lawyer from acting in the dual capacities of counsel and witness except in certain limited circumstances.[1] In this case the attorney who drafted the purported will testified at trial while a member of his firm acted as counsel. On appeal, Grace, who now has a dif-

---

[1] The Code of Professional Responsibility DR5-101(B) reads:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm; to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

And DR5-102(A) provides:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR5-101(B) (1) through (4)."

ferent attorney, argues that she was prejudiced by the action of her former counsel. She argues that although no objection or inquiry was made by her or anyone else below, we should grant a new trial because the trial justice should have acted sua sponte in the face of this alleged breach of the code. We fail to see how we can order a new trial when this issue was not raised below; nor are we sure that a new trial would be the proper remedy in any event.

However, while we cannot grant the relief sought, we do acknowledge that Grace has raised a question of great import because it seems to us, from the number of controversies that have been before us challenging the validity of a will, a deed, or similar document, these provisions of the code are observed in the breach. While we are aware that this has been a common practice in the past, tradition cannot supplant professional propriety. Beginning today, it is incumbent upon all members of the bar to guard against possible infractions of DR5-101(B) and DR5-102(A). Trial judges are urged to insist upon compliance with the Disciplinary Rules. A word to the wise ought to suffice.

The proponent's appeal is denied and dismissed, and the judgment below is affirmed.

*John J. Vallone, Jr., Louis J. Vallone,* for appellees.

*Swan, Keeney, Jenckes & Asquith, Edward W. Moses,* for proponent-appellant.