OPINION
 

 KELLEHER, Justice.
 

 On March 8, 1983, a four-count criminal information was filed in the Superior Court for Newport County, charging the defendant, Daryl Cobb, with kidnapping, assault with intent to commit first-degree sexual assault, assault with a dangerous weapon, and second-degree sexual assault. The defendant and the complainant, at the time of the incident that prompted the return of the information, were both members of the United States Navy. He was a third-class storekeeper assigned to a frigate that sailed out of the Newport Naval Base; the complainant was a nineteen-year-old woman who was assigned gate sentry duty checking the identity of motorists seeking to enter the base.
 

 On January 18, 1983, defendant and the sentry had dinner together at defendant’s rented third-floor apartment, which was situated in the city of Newport. The dinner followed a bit of jogging and the lifting of weights at a gymnasium situated on the base. In fact, the sentry wore her jogging attire to the apartment. This attire included a yellow headband. At this point we see no need, in light of the issues raised on appeal, to detail what happened at the apartment, except to say that defendant made sexual advances toward the sentry and that at 5:31 a.m. on January 19, the sentry called the Newport police department and reported that she had been held against her will in defendant’s apartment and sexually assaulted. Throughout this controversy defendant has insisted that any involvement he had with the sentry was completely consensual.
 

 After the presentation of the evidence, the trial justice dismissed the kidnapping count. Thereafter, the jury returned a not-
 
 *1168
 
 guilty verdict in regard to the count charging assault with intent to commit first-degree sexual assault and guilty verdicts in regard to the remaining two counts.
 

 There is no question that during the evening the sentry lost her yellow headband and a set of keys with her identification tags attached and that defendant tossed a knifelike letter opener (with which he had allegedly threatened the sentry) out a third-floor window that had become broken earlier as the sentry struggled with defendant. Thus it was that after the sentry made her complaint, the police sought and obtained search warrants to search for these three items in defendant’s apartment, his automobile, and his locker aboard the frigate.
 

 On the evening of January 21, 1983, the police searched defendant’s car and, in the process, saw on the back seat a well-worn duffel bag that contained a number of zippered compartments. In one compartment they found the sentry’s keys and dog tags, and in another compartment they found a nine-by-twelve-inch leatherette folder. When the folder was opened, its right inner side became a clipboard. The left inner side had attached to it a somewhat triangular leatherette flap that could serve as a storage place for papers, the contents of which give rise to the first of the two issues now before us.
 

 The papers found on the left inner side of defendant’s folder consisted of a number of handwritten pages of notes. Two of the five sheets detailed the events of the evening defendant spent with the sentry. They were prepared by him after he was interrogated by the Newport police. The original two sheets were misplaced or lost while they were in the custody of the Newport police. However, photostatic copies were introduced into evidence and were used on cross-examination by the prosecutor to impeach defendant’s direct testimony. The defendant now claims that the trial justice erred in denying his motion that sought to suppress the use of the sheets as well as the statement defendant gave to the police on January 22, 1983, because, in defendant’s eyes, the statements were tainted by the illegal seizure of the handwritten material.
 

 The trial justice, in denying the motion to suppress, said that in seizing the notes from the folder, the police, by virtue of the search warrant, were authorized to open the bag as they pursued their search for the items listed in the warrant and that it was reasonable, in making the search, to look into the folder’s pouch. The notes, in the trial justice’s eyes, were “in plain sight” and properly seized.
 

 In
 
 United States v. Ross,
 
 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), where the controversy involved a warrant-less search of an automobile, the Supreme Court, in alluding to an automobile search made pursuant to a search warrant, said:
 

 “A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.”
 
 Id.
 
 at 821, 102 S.Ct. at 2171, 72 L.Ed.2d at 591.
 

 At oral argument defendant’s counsel contended that it was highly unlikely that the police were looking for the knifelike letter opener in the pouch. This may or may not have been so, but this view overlooks the fact that another object of the search at that time was the headband, an item that conceivably could have been tucked away in the pouch.
 

 Recently, in
 
 State v. Eiseman,
 
 — R.I. —, —, 461 A.2d 369, 379 (1983), the court pointed out that the “plain view” doctrine allows the seizure of evidence that is in plain view when the officer is lawfully in a position to see the evidence, the officer
 
 *1169
 
 discovers it inadvertently, and the incriminating nature of the object is immediately apparent to the officer. In
 
 Texas v. Brown,
 
 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), it was made clear that the “immediately apparent” requirement simply means that there is probable cause to associate the plain-view items with criminal activity.
 

 Here, the trial justice touched all the bases as he applied the plain-view doctrine and came to the conclusion that the police were justified in believing that the two sheets, one of which had the sentry’s name spread across the top, had an eviden-tiary value as they pursued an investigation of the sentry’s complaint.
 

 The final phase of defendant’s appeal centers on his contention that the statement he gave to the police should have been suppressed because of the inordinate time that elapsed between his arrest and his appearance for arraignment purposes before a District Court justice. Rule 5(a) of the Superior Court Rules of Criminal Procedure provides that an officer making an arrest pursuant to a warrant shall take the arrested person “without unnecessary delay before a judge of the District Court.”
 

 This rule was before the court in
 
 State v. Johnson,
 
 119 R.I. 749, 756, 383 A.2d 1012, 1017 (1978), where it was emphasized that if delay was to render a confession inadmissible, the delay must have been operative at the time the confession was made. Here, defendant was arrested at 9:30 p.m. on January 21, 1983. At that time he was given his
 
 Miranda
 
 warnings, but he did not ask for an attorney. After the usual processing in the police station, he was placed in a cell at 10:30 p.m. The next day at 9:30 a.m. he was again given the
 
 Miranda
 
 warnings and told that he might have an attorney. He signed a waiver-of-rights form after being specifically advised of the charges being brought against him. At no time did he indicate that he was unwilling to talk with the police or that he wanted an attorney present. Once the waiver-of-rights form was signed, defendant was asked a series of questions about the sentry’s allegations, and he went over a statement that he had given the police on January 19, 1983, when he responded to a telephone invitation to come to police headquarters. There ensued about an hour and forty-five minutes of conversation, which was later reduced to writing. Before defendant’s version of the events of January 18 were placed in written form, he made two phone calls. It was now approximately 11 a.m. One call was to his wife and the other was to some unidentified male. After making these calls, defendant’s statement was reduced to writing and read by him; after he made two minor corrections, defendant signed the document and initialed each page. Shortly thereafter he was presented for arraignment.
 

 An examination of the record convinces us that not one shred of evidence exists that the so-called delay in bringing the defendant before a judicial officer in any way prompted him to give the police his version of what occurred in his apartment between him and the sentry.
 

 The defendant’s appeal is denied and dismissed, and the judgment of conviction is affirmed.