STATE

v.

**Alvin M. SMITH.**

No. 91–51–C.A.

Supreme Court of Rhode Island.

Jan. 30, 1992.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., J. Scott Kilpatrick, Sp. Asst. Atty. Gen., for plaintiff.

Mark L. Smith, North Smithfield, for defendant.

## OPINION

KELLEHER, Justice.

This matter is before us as a result of the appeal of the defendant, Alvin M. Smith (Smith), from a conviction on two counts of

first-degree murder of two children. The trial justice sentenced Smith to two life sentences without eligibility for parole plus an additional twenty-five years pursuant to G.L.1956 (1981 Reenactment) § 12–19–21, as amended by P.L.1988, ch. 402, § 1, the "habitual criminal" statute.

The mother of the two murdered children testified that on the morning of September 3, 1988, she was awakened by Smith when he entered her Providence apartment and attempted to rape her. The woman testified that Smith held a screwdriver, later identified by police as a six-inch-long handled tool, in his hand. A brief struggle ensued whereupon the woman fled her apartment naked and ran to her cousin's home across the street, where she called the police. The woman testified that her two children—a daughter, aged four, and a son, aged eight—remained asleep in the apartment.

In answering the call, police arrived at the Providence address at approximately 7:30 a.m. and discovered the bodies of a small girl and a young boy, both with multiple puncture wounds. Rescue-squad personnel summoned to the scene pronounced the girl dead and transported the boy, who had a weak pulse and agonal respirations, to Rhode Island Hospital where he was later pronounced dead. Autopsy reports on the children indicate that the girl had been stabbed twenty times and the boy seventeen times by an instrument that most likely resembled a screwdriver. A pillowcase with a likeness of a sneaker sole imprinted in blood was seized from the crime scene. Police discovered another sneaker print impressed upon the little girl's back. Expert testimony identified the imprint as one made from a size–12 Warrior model Pony sneaker.

On October 2, 1988, Smith was arrested in New Haven, Connecticut, pursuant to a warrant issued for parole violations in Massachusetts, and was taken into custody. As a result of a scuffle that occurred during his arrest, Smith was deposited into the custody of Providence police with a swollen left eye. While in custody Smith signed a rights form that contained the language "I give up my rights. I do not want a lawyer present at this time. I want to talk to police." In that statement Smith admitted to being present in the Providence apartment the morning of the double homicide for the purpose of robbing the mother. He also admitted that the size–12 Pony sneakers he wore the morning he was present in the apartment were the same ones he was wearing at the time of his arrest. Smith also testified that he only signed the New Haven police department's rights form because of a beating. However, Smith denied being involved with the murders. Providence detective William Carroll (Carroll) testified at the pretrial hearing that he noticed no injury to Smith's face except for a swelling of his eye. Carroll further testified that Smith acknowledged he understood the *Miranda* rights that were read to him, as well as the New Haven rights form, which he noted Smith read, initialed, and signed.

Two days later, on October 4, 1988, at the New Haven correctional facility, Smith signed a voluntary interview statement form and agreed to be interviewed by Carroll. Using the same New Haven rights form, Smith was again given his *Miranda* rights and again denied killing the two children. Carroll testified that at Smith's request he began to show him slides made of the victims' bodies and of the crime scene. One slide showed the body of the little girl with a footprint evident on her back, left by a shoe identical in style and size to one of the shoes seized from Smith at his arrest. Smith began to cry. After approximately six slides, Smith became ill, ran to the bathroom and vomited. Resuming the interview, and in the presence of five people, Smith confessed to the killings and signed the statement indicating such.

At the pretrial hearing Smith testified that after emerging from the bathroom, he asked for an attorney. He said he was informed that one of the individuals present, a James Ryan (Ryan), was an attorney, but Smith was not told that Ryan was the chief of the Criminal Division of the Rhode Island Office of the Attorney General. However, Smith admitted he made reference to "A.G. Chief Jim Ryan"

in his statement and testified that he was aware that the letters A.G. referred to attorney general.

Prior to trial the trial justice ruled on Smith's motion to suppress statements made to police and found that Smith understood his *Miranda* rights because he had read the statement, understood the document itself, and signed the rights form several times. Additionally the trial justice found that state's exhibit No. 52, a photograph of Smith taken the evening of his arrest on October 2, 1988, did not support Smith's testimony about the manner in which and the degree to which he claimed he was beaten. Lastly the trial justice found that Smith's signature on the rights form supports the conclusion that he knowingly and voluntarily waived his rights, without any abuse, force, or violence on the part of police.

Among the various people who testified at the pretrial hearing as well as at trial was Ryan, of the Rhode Island Attorney General's office. Ryan testified that he observed the October 2, 1988 interview between Smith and Carroll. Ryan accompanied the Providence detective to the New Haven prison on October 4, 1988, to interview Smith because Ryan was working on a case pending against the mother of the two children, herself a suspect in the double homicide at the time of Smith's interview. Ryan indicated that Smith was questioned for approximately four hours, during which time he was offered food, drink, and several respites. Moreover, Ryan testified that Smith was allowed to compose himself following his response to viewing the slides and told Ryan that "she [the mother] didn't do it, get her out of jail tonight." Finally Ryan testified that Smith instructed Carroll to take a statement, which he identified as state's exhibit No. 59, Smith's dictated confession of October 4, 1988. Smith testified that as he spoke, Carroll wrote each word down; he further testified that he read the brief statement and signed it because Carroll had written down his dictated words exactly.

At trial the trial justice instructed the jury to make an independent finding of the voluntariness of Smith's statements to police. The jury not only found Smith guilty of two counts of first-degree murder but also found that both murders involved aggravated battery and torture. On June 7, 1990, the trial justice sentenced Smith to two terms of life imprisonment without possibility for parole. On June 15, 1990, Smith was adjudicated a habitual criminal pursuant to § 12–19–21 and sentenced to an additional twenty-five years.

In his appeal Smith raises four concerns. He contends that the trial justice erred in (1) denying Smith's motion to suppress certain statements made subsequent to his arrest, (2) permitting certain colored slides depicting the victims' bodies and the crime scene to be introduced into evidence, (3) permitting an attorney who is a member of the staff of the Attorney General to testify on behalf of the prosecution at trial, and (4) imposing a cruel and unusual punishment, consisting of an additional twenty-five years pursuant to the habitual-criminal statute in violation of the Eighth Amendment and article 1, section 8, of the Rhode Island Constitution. We do not subscribe to any of the four contentions Smith has voiced. Accordingly we affirm both Smith's conviction and the sentence imposed by the trial justice.

■ The first issue Smith raises on appeal concerns whether the admission of certain statements, characterized as confessions, given to police at the time of his arrest violates his rights under the Fifth and Fourteenth Amendments to the United States Constitution and article 1, section 10, of the Rhode Island Constitution. Specifically Smith questions the voluntariness of his statements, contending that they were obtained after his request for an attorney but before counsel was provided. Smith additionally argues that such statements resulted from physical and psychological pressures on the part of police. In particular Smith contends that he was beaten about the face and head with a police officer's nightstick-flashlight, slammed headfirst into a cement sidewalk, and kicked in the ribs and testicles during his arrest.

■ It has been well established that no statement may be admitted into evidence against a defendant unless the state can prove that the defendant knowingly and intelligently waived his or her rights not to answer questions and have the assistance of counsel. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. White*, 512 A.2d 1370, 1375 (R.I.1986); *State v. Fuentes*, 433 A.2d 184, 189 (R.I.1981). However, a confession is admissible when the statements made during the interrogation are truly voluntary. *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726; *Fuentes*, 433 A.2d at 189; *State v. Amado*, 424 A.2d 1057, 1061 (R.I.1981).

■ In the consideration of the issue of voluntariness of a confession, a defendant is entitled to an independent hearing conducted by the trial justice outside the presence of the jury. *State v. Ferola*, 518 A.2d 1339, 1345 (R.I.1986); *State v. Baton*, 488 A.2d 696, 701 (R.I.1985); *State v. Verlaque*, 465 A.2d 207, 209 (R.I.1983); *Fuentes*, 433 A.2d at 189. At the independent hearing the state has the burden of proving by clear and convincing evidence whether a defendant's statements were the product of a "free and rational choice" and not a product of coercion of any kind. *Fuentes*, 433 A.2d at 189 (quoting *Greenwald v. Wisconsin*, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77, 80 (1968)). *See also Ferola*, 518 A.2d at 1345; *White*, 512 A.2d at 1375; *Amado*, 424 A.2d at 1062. In addition the trial justice is responsible for resolving material disputes of fact, which include resolving questions of credibility. *State v. Lemon*, 478 A.2d 175, 178 (R.I.1984); *State v. Vargas*, 452 A.2d 310, 312 (R.I.1982). Should the trial justice rule that the defendant's statements are admissible, he or she is required to instruct the jury to make an independent finding on the issue of voluntariness. *Ferola*, 518 A.2d at 1345; *Verlaque*, 465 A.2d at 209-10.

■ On review an appellate court first examines the record to determine if the trial justice followed the appropriate procedural safeguards; if so, reversal is proper only if the decision of the trial justice was clearly erroneous. *Ferola*, 518 A.2d at 1345; *Fuentes*, 433 A.2d at 189; *Amado*, 424 A.2d at 1062; *State v. Leavitt*, 103 R.I. 273, 290, 237 A.2d 309, 318, *cert. denied*, 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155 (1968). Moreover, the trial justice's findings of fact are treated with great deference. *State v. Pacheco*, 481 A.2d 1009, 1016 (R.I.1984); *Amado*, 424 A.2d at 1063.

The instant case is factually similar to *Fuentes*, where the defendant contended that he was periodically beaten and physically abused by the police, which assaults included being hammered with a telephone, struck by a chair, and dragged up a flight of stairs, and thus was coerced into making incriminating statements concerning a double homicide. *Fuentes*, 433 A.2d at 189-90. This court affirmed the trial justice's finding that a photograph taken of the defendant shortly after his confession failed to substantiate the defendant's claims of abuse. *Id.* at 190. Similarly the trial justice in this case found that the booking photograph of Smith taken on October 3, 1988, fails to corroborate Smith's testimony that he was struck repeatedly about the face and head with a nightstick-flashlight. The trial justice also noted that Smith was able to testify to police for a number of hours, a feat that did not support a finding that he was severely bludgeoned.

■ After an examination of the entire record, we conclude that the trial justice reasonably decided that Smith had not been subjected to physical abuse by the police and properly denied Smith's motion to suppress his confession. Moreover, there is no evidence indicating that the statements made by Smith following his viewing of the slides were involuntary. Lastly the fact that Smith read, understood, initialed, and signed the rights-waiver form supports the trial justice's conclusion that Smith knew and understood his *Miranda* rights, and freely and rationally decided to waive them, without coercion on the part of the police.

■ Directing our attention next to the second issue Smith raises on appeal, that is, whether the introduction of certain colored

slides depicting the bodies of the two victims and of the crime scene was appropriate, we determine that Smith's contentions are meritless.

Smith argues that the slides provided by the medical examiner served no other purpose than to inflame the jury. Since he stipulated to the identity of the two victims and the wounds inflicted, Smith contends, the state could have easily used medical silhouettes to demonstrate the wounds suffered and supplemented its presentation with the report of the medical examiner.

Relevant evidence may nonetheless be excluded because of prejudice. Rule 403 of the Rhode Island Rules of Evidence. Previously this court has stated that the general rule regarding the materiality or relevancy of photographs is a matter of judicial discretion. *State v. Bertram,* 591 A.2d 14, 23 (R.I.1991). We reiterate that the role of the appellate court is to "review the record and to determine whether the trial justice carefully considered whether the probative value of the evidence was outweighed by undue prejudice, 'keeping in mind that even if the evidence offered is of a gruesome nature and might tend to influence the jury unduly, it may nevertheless be admissible if it is otherwise material and competent.'" *Id.* (quoting *State v. Griffin,* 567 A.2d 796, 801 (R.I.1989)). *See also State v. Ware,* 524 A.2d 1110, 1113 (R.I.1987). As this court stated earlier, it is well settled that in a prosecution for homicide, photographs shown to be

> "faithful representations of the victim at the time in question, are, in the discretion of the trial court, admissible into evidence as an aid to the jury in arriving at a proper understanding of the evidence as proof of the corpus delicti, the extent of the injury, the condition and identification of the body or for their bearing on the question of the degree of atrociousness of the crime, even though such pho-

tographs may tend to have an influence beyond the strict limits for which they were introduced." *State v. Winston,* 105 R.I. 447, 450, 252 A.2d 354, 356 (1969).

■ The fact that colored slides depict an unpleasant sight is not grounds for an appellate court to find an abuse of discretion. *State v. Danahey,* 108 R.I. 291, 301, 274 A.2d 736, 741 (1971). Here the slides were necessary to supplement the extensive testimony from the medical examiner, who explained the size, shape, and pattern of the puncture wounds as well as the sneaker imprint on the back of one of the victims.

Additionally the state has the burden of proof regarding torture or aggravated battery for a sentence of life without parole pursuant to G.L.1956 (1981 Reenactment) § 11-23-2, as amended by P.L.1984, ch. 221, § 1 and § 12-19.2-1, as amended by P.L.1984, ch. 362, § 2, and the probative value to the state outweighs any prejudice to Smith. The trial justice did not err in denying Smith's motion to suppress the slides but carefully weighed the probative value of the slides against their prejudicial effect and properly admitted them into evidence to be presented to the jury.

■ The third contention that Smith raises concerns permitting Ryan, an attorney and chief of the Criminal Division of the Rhode Island Office of the Attorney General, to testify on behalf of the prosecution at Smith's trial. The implication is that Ryan's testimony at trial was accorded more weight because of his position and as a result prejudiced the jury against Smith on the voluntariness of his confessions. Smith also contends that Ryan's testimony violates the principles established in *Judge v. Janicki,* 118 R.I. 378, 374 A.2d 547 (1977), and the Code of Professional Responsibility DR 5-101(B).[1]

---

1. DR 5-101(B) of the Code of Professional Responsibility provides:

    "A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

    (1) If the testimony will relate solely to an uncontested matter.

    (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

    (3) If the testimony will relate solely to the nature and value of legal services rendered in

Smith's contentions on this issue are unfounded. A court may only scrutinize the competency of a witness testifying at trial and not his or her professional status. Indeed, the only two groups of people specifically characterized as incompetent witnesses by the Rules of Evidence are judges presiding at trial and jurors at trial. Rules 605 and 606 of the Rhode Island Rules of Evidence. *See also United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir.), *cert. denied*, 493 U.S. 841, 110 S.Ct. 127, 107 L.Ed.2d 88 (1989). Moreover, an attorney may act as a witness in a trial, subject to conflicts of interest. Although there is no hard-and-fast rule regarding when it is permissible for a prosecuting attorney to testify as a witness against a defendant, we presume that a prosecuting attorney is competent to testify at a trial. Since this conflict-of-interest exception is not applicable here, there is no bar to Ryan's testifying. The consensus among both federal and state courts indicates that an assistant United States attorney or assistant district attorney is competent to testify as a witness in a case prepared and tried by another United States or district attorney. *See United States v. McCrady*, 774 F.2d 868 (8th Cir.1985); *Commonwealth v. Turner*, 390 Pa.Super. 216, 568 A.2d 622 (1989); *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988).

We distinguish Smith's reliance on *Janicki* at several points. *Janicki* is a civil matter involving the probate of a will in which the drafting attorney testified at trial while a member of his firm tried the case. Although this court refused to reverse and could not grant the relief sought, we nevertheless acknowledged the importance of this breach in professional propriety and observe that subsequent to the *Janicki* opinion, we replaced the code with the Rules of Professional Conduct, which addresses this issue and requires sanctions for violations of true conflicts of interest.

the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

*Judge v. Janicki*, 118 R.I. at 386, 374 A.2d at 550–51. Today Rule 3.7 of the Rules of Professional Conduct concerns a lawyer's testifying as a witness and provides:

"**Rule 3.7. Lawyer as Witness.**—(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 [Conflict of Interest: General Rule] or Rule 1.9 [Conflict of Interest: Former Client]."

Ryan is not the attorney of record appearing on the state's behalf; if that were the situation, the rules would clearly forbid Ryan from trying the case at bar. *See* Rule 3.7(a). Ryan has not violated this rule; he was present at Smith's confession and testified to the propriety in which that situation was conducted. Accordingly we do not believe the trial justice erred on this point of Smith's appeal.

■ We now turn to the last of Smith's four contentions. Smith insists that imposing an additional twenty-five years pursuant to the habitual-criminal statute, § 12–19–21, is cruel and unusual punishment and violates the Eighth Amendment to the United States Constitution and article 1, section 8, of the Rhode Island Constitution.[2] Smith further contends that his sentence is excessive and serves no penological justification for his conduct.

The habitual-criminal statute, § 12–19–21, provides in relevant part:

**2.** Smith does not raise as an issue of cruel and unusual punishment the imposition of two life sentences without parole, nor does he contest his adjudication as a habitual criminal under the statute.

"(A) If any person who has been previously convicted in this or any other state of two or more felony offenses arising from separate and distinct incidents and sentenced on two or more such occasions to serve a term in prison shall, after said convictions and sentences, be convicted in this state of *any* offense punished by imprisonment for more than one year, such person shall be deemed an "habitual criminal." Upon such conviction, said person deemed a habitual criminal shall be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years, in addition to *any* sentence imposed for the offense of which he or she was last convicted. (Emphasis added.)

We have noted previously that habitual-offender statutes have been long upheld as constitutional. *State v. Tregaskis*, 540 A.2d 1022, 1026 (R.I.1988). The statutory language clearly articulates the plain and unambiguous meaning of the provision, that is, a twenty-five-year enhancement shall be added "in addition to any sentence imposed." Although the General Assembly created no statutory exception for a sentence of life without parole, we note that in *State v. Lassor*, 555 A.2d 339 (R.I. 1989), this court upheld a sentence of life without parole, consecutive to life without parole, consecutive to life, consecutive to twenty years—a sentence that similarly cannot possibly be served—but nevertheless remains constitutional.

Smith has two prior convictions for rape of a child under the age of sixteen in Massachusetts for which he received prison sentences. Smith was found guilty and convicted of the murders and torture of two children with a screwdriver here in Rhode Island. While Smith's sentence is one he undoubtedly cannot serve, his sentence is not cruel and unusual so as to constitute a violation of the Rhode Island Constitution, as § 12–19–21 is consistent with the article 1, section 8, requirement that "the punishment should be in proportion to the offense." *Tregaskis*, 540 A.2d at 1026.

Applying the plain language of the statute, the trial justice properly sentenced Smith to an additional twenty-five years. Accordingly Smith's appeal is denied and dismissed.