321 A.2d 87.

## STATE *vs.* WILLIAM E. TELLA.

JUNE 12, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This appeal arises from the trial and conviction of the defendant before a judge and jury in the Superior Court on three indictments, each of which charged him with receiving stolen property in violation of G. L. 1956 (1969 Reenactment) §11-41-2.[1] Because we find that the evidence upon which those indictments and convictions were based was the product of a search made pursuant to an invalid search warrant, we reverse.

---

[1]Following the defendant's conviction and the filing of his notice of intention to prosecute a bill of exceptions, Rule 4(b) of our rules became effective. It substituted an appeal for a bill of exceptions as the means of securing appellate review of criminal proceedings in the Superior Court. In these circumstances, we treat his notice of intention to prosecute a bill of exceptions as a notice of appeal, even though that bill was not perfected. *State* v. *Lombardi,* 113 R. I. 206, 319 A.2d 346 (1974).

On August 24, 1971, Sergeant Lionel J. Benjamin of the Rhode Island State Police presented a District Court judge with an application for a warrant to search certain premises owned by defendant and located at 731 Central Avenue in the town of Johnston. Annexed to the application was a four-page, single-spaced, typewritten affidavit wherein the sergeant states that on July 19, 1971, he met with an unnamed, reliable informant who gave detailed information about his participation in five "breaks," the first of which occurred on July 21, 1969, and the last on September 16, 1970. According to the informant, approximately $143,000 worth of precious metals and other contraband stolen in those breaks was delivered at undisclosed times to defendant's residence in Johnston.

The affidavit further advises that the informant stated that "there is a precious metal scale located in the cellar portion of [defendant's residence] * * * and that there is also a large type service scale located in the back yard which is used by [defendant] to weigh said stolen precious metals and other contraband"; that in the rear yard of defendant's residence "there is a green cinder block type structure * * * which [defendant] uses for the purposes of melting stolen precious metals and that within said structure is kept molds, electric and gas melting pots"; that "each time" the stolen precious metals were taken to defendant's residence they would be "weighed and the weight would be recorded"; that in the cellar portion of defendant's residence is "an office in which the records of all transactions in stolen precious metals and contraband are kept"; and that he (the informant) would then report to the Small State Coin Co., a Providence concern which was operated by defendant and his brother, where he would be paid for the stolen merchandise in cash.

During the slightly more than one month which intervened between these disclosures and the August 24th appli-

cation for a warrant, the police conducted extensive independent investigations which verified what the informant had related about the breaks and the amounts involved therein. This investigation and verification made it possible for the sergeant to declare in the affidavit his belief in the informant's reliability.

On the strength of that affidavit, the District Court judge issued a search warrant on August 24, 1971. It particularly described defendant's cellar and adjacent cinderblock structure as the places to be searched and the abovementioned records, scales, molds, and melting apparatus as the things to be seized.[2] It was executed on the next day, and the property seized included not only the article described therein but also firearms, rugs, and electronic equipment which, at the trial, the state attempted to prove were stolen merchandise.

Following the return of the indictments, defendant moved to suppress the seized evidence on the ground that the search had been based on an illegal warrant. That motion was denied and the challenged evidence was thereafter admitted at the trial and provided the basis for defendant's conviction.

The defendant attacks the affidavit on the ground that by the time it was presented to the District Court judge, its contents had become so stale as to make it facially incapable of supplying the probable cause requisite to the issuance of a warrant. The success of that attack hinges upon whether the affidavit's contents furnished the issuing magistrate with sufficient facts to permit a reasonable conclusion that the property which was the object

---

[2]The warrant describes the property or articles to be searched for as: "Records & Files indicating purchases, sales & shipments of precious metals. Precious metal scales, precious metal molds, Gas & Electric melting parts [sic]. Books indicating value, purchase, sales transactions and shipments of precious metals."

of the search was actually on the premises to be searched at the time the warrant issued.[3]

That requirement demands a showing in the affidavit of "* * * facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro* v. *United States*, 287 U. S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263 (1932).[4] Without that showing of timely probable cause, even the most convincing proof that the property to be seized may have been on the premises to be searched at some remote time in the past will not justify a present invasion of privacy. *Durham* v. *United States*, 403 F.2d 190, 193 (9th Cir. 1968).

Whether the sergeant's affidavit, which supported the issuance of the warrant in this case, measures up to these standards must be determined by viewing it "in a common-sense and realistic fashion," without insistence upon "technical requirements" and unhampered by a "grudging or negative attitude." *United States* v. *Ventresca*, 380 U. S.

---

[3] *Sgro* v. *United States*, 287 U. S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1962); *Murby* v. *United States*, 2 F.2d 56 (1st Cir. 1924); Annot. 100 A.L.R.2d 525, §§5-7 (1965), including Later Case Service, and cases collected therein; Mascolo, *The Staleness of Probable Cause in Affidavits for Search Warrants: Resolving the Issue of Timeliness*, 43 Conn. B.J. 189 (1969), and cases cited therein.

[4] The procedures described in the Manual for United States Magistrates (1972), issued by the Administrative Office of the United States Courts, explicitly states at pages 7-3 and 7-4 that:

"A search warrant should not be issued unless the showing made in connection with the application therefor clearly indicates probable cause that the property to be seized is actually at the place to be searched * * *.

"A showing to the effect that the property to be seized was at the place to be searched a substantial time before the application was made does not justify the issuance of a search warrant, for the reason that during the intervening period the property may have been moved away. The facts must show that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant."

102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *State* v. *LeBlanc,* 100 R. I. 523, 530-31, 217 A.2d 471, 475 (1966).

Here, the affidavit furnishes us with the dates of the informant's breaks, and it tells us what he observed when, following each break, he delivered the stolen goods to defendant's premises. But it does not advise us of the particular time when he made those deliveries and had an opportunity to observe the conditions he described to the sergeant.

Undated information of that character from an anonymous source would be fatal to the issuance of a warrant if the affidavit were also lacking in reasonably specific clues relevant to the issue of timely probable cause. *Rosencranz* v. *United States,* 356 F.2d 310, 318 (1st Cir. 1966); *Neely* v. *Commonwealth,* 269 Ky. 451, 107 S.W.2d 305 (1937); *cf. State* v. *Butts,* 97 R. I. 147, 151, 196 A.2d 415, 417 (1964). This affidavit, however, contains averments from which it can be concluded that the informant's observations must have been made within the time span which commenced on September 16, 1970—the date of the last break—and ended on July 19, 1971—the date of his disclosures to Sergeant Benjamin.

[4] True, the affidavit does not pinpoint when, in that time span, those observations were made. But we fill that gap in the same manner as do those courts faced with averments that observations were made "within" a specified period, that is, as if they occurred not throughout the duration of that time span, but on the most remote date within that span. *State* v. *Hoffman,* 516 P.2d 84 (Ore. App. 1973); Annot., 100 A.L.R.2d 525, 532-33 (1965), and cases collected therein. In this case that would be September 16, 1970, the date of the last break.

What we must determine, then, is the timeliness or staleness of the informant's September 16, 1970 observa-

tions when brought before the magistrate on August 24, 1971. We can turn to no hard and fast rule for the answer. *United States* v. *Guinn*, 454 F.2d 29, 36 (5th Cir. 1972). Instead, we must consider the particular facts of this case, taking into account not only the time differential, but also "* * * the nature of the criminal activity, the length of the activity, and the nature of the property to be seized * * *." *United States* v. *Johnson*, 461 F.2d 285, 287 (10th Cir. 1972).

Here, to be sure, after each of the five breaks the informant observed equipment presumably used in promoting criminal activity by converting stolen precious metals into readily salable form. But the propriety of the issuance of the warrant depended upon the assumption of that equipment's continuing presence at the same location, and upon the further inference that the same criminal activity continued for the more than 11 months which intervened between the informant's September 16th observations and the August 24th issuance of the warrant.

The rules of evidence which obtain at criminal trials do not bind magistrates when they pass upon probable cause. *Aguilar* v. *Texas*, 378 U. S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964); *Draper* v. *United States*, 358 U. S. 307, 311, 79 S.Ct. 329, 332, 3 L.Ed.2d 327, 331 (1959); see *State* v. *Nerney*, 110 R. I. 364, 292 A.2d 882 (1972). Just because those rules are relaxed, however, does not mean that inferences should be pyramided in order to find timely probable cause, particularly when the state has been unable to cite a single case wherein the time differential between the observations and the warrant has even approached 11 months.[5]

---

[5]The state does cite *United States* v. *Guinn*, 454 F.2d 29 (5th Cir. 1972), where, owing to special circumstances, a lag of almost seven months was held not to be too great. The usual dividing line between what is stale and what is timely, however, is 30 days. *See* Annot., 100 A.L.R.2d 525,

The state argues, however, that the apparent remoteness resulting from the 11-month-plus time interval has been overcome because the sergeant's affidavit is couched in the present tense and quotes the informant as saying that "* * * there *is* a precious metal scale located in the cellar portion of this house * * * there *is* also a large type service scale located in the back yard * * *," and "there *is* located in the cellar portion of [defendant's] residence an office in which the records of all transactions in stolen precious metals and contraband *are* kept." (emphasis added)

In support of this contention the state relies primarily on *Borras* v. *State,* 229 So.2d 244 (Fla. 1969), *appeal dismissed and cert. denied,* 400 U. S. 808, 91 S.Ct. 70, 27 L.Ed.2d 37 (1970). There, the court held that an affidavit's failure to state when marijuana was sold to a confidential informant and was possessed by the defendant was not fatal to the validity of the search warrant. The court's only rationale was that the affidavit used the present tense in alleging a violation that continued right up to the time the warrant issued.

But in our judgment the existence or nonexistence of timely probable cause should not turn on whether the affidavit's verbs end in "s" or "ed." Such an approach would be overly mechanical, contrary to the admonition against "an unduly technical and restrictive reading," *United States* v. *Ventresca, supra* at 111, 85 S.Ct. at 747, 13 L.Ed.2d at 691, and subject to the dangers referred to in *Rosencranz,* where the court said:

---

534-42 (1965). This was recognized in *Schoeneman* v. *United States,* 317 F.2d 173, 177 (D. C. Cir. 1963), where the court noted:

"* * * we cannot overlook the fact that the Government could cite, and we could find, no case which sustained a search warrant issued more than 30 days after finding of the evidence which constituted the basis for the search."

> "Officers with information of questionable recency could escape embarrassment by simply omitting averments as to time, so long as they reported that whatever information they received was stated to be current at that time. Magistrates would have less opportunity to perform their 'natural [sic] and detached' function. Indeed, if the affidavit in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for them." 356 F.2d at 316-17.

While these pitfalls cannot be ignored, it must also be recognized that there will be cases where the use of the present tense, when viewed in the context of the surrounding circumstances, may inferentially demonstrate a continuum of probable cause from the time of the observations down to the time the warrant issues.

Thus, for example, in *United States* v. *Unger*, 469 F.2d 1283, 1287-88 (7th Cir. 1972), *cert. denied*, 411 U. S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973), the facts were recited in the present tense, with rhetoric indicating that the undated events and observations had occurred recently. In addition, the citizen-informant's awareness of the potential for harm of the observed arsenal of dangerous weapons created a likelihood that he would "act upon his discovery with a degree of immediacy," and buttressed the timeliness of the complaint for the warrant. In *Coyne* v. *Watson*, 282 F.Supp. 235, 238 (S.D. Ohio 1967), the court found that the affidavit's recital " 'that there is urgent necessity that said premises be searched in the night, to prevent said things from being concealed or removed so as not to be found' " was language which "shows on its face that the information received by the officer was recently contemporaneous and was to the effect that the machine gun was 'now' in the possession of Coyne on the described premises."

But those cases are clearly distinguishable from this one.

The underlying circumstances disclosed by the affidavit in this case do not reasonably yield an inference that the information received was "recently contemporaneous," or that the informant, notwithstanding his silence after four previous breaks, was suddenly compelled to tell all.

In sum, we find that there was nothing in the affidavit from which the District Court judge could have reasonably concluded that any of the described objects remained on the defendant's premises beyond the most remote date of the time span appearing therein, or even that they continued during the lapse of more than a month between the disclosures and the application for a warrant. The affidavit failed to disclose any basis for a finding that the described things were probably present in defendant's cellar or in the adjacent cinder-block structure when the warrant issued. Accordingly, we are compelled to conclude that the August 24th search warrant was invalid, that the search pursuant thereto was unlawful, and that the evidence seized in that search should have been suppressed. Because this conclusion is dispositive, there is no need to consider defendant's other arguments.

The defendant's appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court for further proceedings.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *Edward E. Dillon, Jr.*, Special Asst. Attorney General, for plaintiff.

*Raymond J. Daniels*, for defendant.