COMMONWEALTH vs. DEBORAH H. LETT.

Plymouth. March 9, 1984. — October 15, 1984.

Present: WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Search and Seizure,* Warrant, Plain view. *Constitutional Law,* Search and seizure.

Even though a portion of a warrant authorizing police to search an apartment for heroin was invalid, police officers who searched the apartment pursuant to the warrant were entitled to seize packets of white powder, cash, and drug paraphernalia which they discovered in the apartment, where a portion of the warrant authorizing a search for a woman's diamond ring was valid and where the scope and intensity of the search during which police discovered the items seized did not exceed the scope and intensity of the permitted search for the ring. [144-148]

INDICTMENTS found and returned in the Superior Court Department on February 10, 1982.

A motion to suppress evidence was heard by *Robert L. Steadman,* J. An application for an interlocutory appeal was allowed by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk and was reported by him.

*Henry E. Quarles, Jr.,* for the defendant.

*Robert P. Snell,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Following the return of three indictments charging the defendant, Deborah H. Lett, with possession of heroin with intent to distribute and other related offenses,[1] she moved

---

[1] On February 10, 1982, the defendant was indicted for possession of a controlled substance in Class A (heroin), G. L. c. 94C, § 32; unlawful possession of a Class D controlled substance (marihuana), G. L. c. 94C, § 34; and unlawful possession of a hypodermic needle and syringe, G. L. c. 94C, § 27 (*e*). A fourth indictment, charging the defendant with conspiracy to violate the Controlled Substances Act, G. L. c. 94C, § 40, was returned on May 26, 1982.

to suppress drugs, drug paraphernalia, and other items seized during a search of her Brockton apartment on December 31, 1981. The defendant also sought to suppress statements she made to the police at the time of the search.[2] The matter was submitted to the trial judge for decision based upon stipulated facts and the parties' briefs without oral argument. The judge found the search warrant valid in part, and his order, entered on March 14, 1983, denied suppression except as to one hundred and thirty-four dollars taken from the defendant's pocketbook and certain of her personal papers. A single justice of this court allowed the defendant's application for an inter-locutory appeal, Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). This case poses the question whether a search warrant, defective in part, is necessarily invalid as a whole. In affirming the order of the trial judge, we hold that under the Fourth Amendment to the Constitution of the United States the tainted portion of a search warrant is severable from the valid portion. Items properly seized under the valid portion should not be suppressed.

We summarize the facts. On the morning of December 31, 1981, a detective of the Brockton police department's narcotic division, accompanied by three State troopers, executed a search warrant for the defendant's apartment at 301 Pine Grove Drive in Brockton.[3] The warrant was issued in the Brockton District Court two days prior to its execution on the basis of the detective's affidavit, and authorized a search of the defend-ant's apartment, for "Heroin a white powder as described G.L. C94C sec 1," and "one gold womans [*sic*] ring with diamond." Permitted entry by the defendant's daughter, the detective and two State troopers found the defendant in bed. The officers informed her of her rights "per Miranda" and told her of the search warrant "for 'dope' (heroin)." The defendant denied possession of any heroin. An initial search of the defendant's

---

[2] In her motion the defendant relied exclusively on the Fourth Amendment to the Constitution of the United States.

[3] The parties have stipulated that all facts relevant to the issues presented by the motion to suppress are set forth in the detective's report of the execution of the search.

pocketbook revealed a plastic bag containing thirty-eight packets of white powder, another plastic bag containing $1,000 in cash, and a third bag containing $134 in cash. The officers, informing the defendant they had found the "dope," inquired about the diamond ring. She stated, "What you found in my pocketbook is all I have. I don't have any diamond ring." Resuming the search, the police further uncovered a yellow glove containing a hypodermic syringe and a silver spoon in a bureau drawer; a small glass vial containing white powder in the defendant's handbag; a black box containing "cocaine paraphernalia"; and, atop a medicine cabinet, a silver spoon, burned on the bottom, "with white residue in it." The defendant, in response to the officers' questions, then acknowledged that she used about four bags of "dope" a day; that she had purchased and sold twenty bags at $50 each within the previous few days; and that she had regularly sold "dope" in the past. She further stated that the $1,000 recovered in her handbag was "dope money." The officers did not find the diamond ring.[4] They took the defendant to the police station where she was booked, fingerprinted, and photographed.

The judge found that the detective's affidavit failed to establish probable cause to search the defendant's apartment for heroin. However, he deemed the affidavit adequate to support probable cause to search for the diamond ring and concluded that, with the exception of the personal papers and $134 in cash, all other items were properly seized. The judge found that items at issue "came into the officers' 'plain view' while they were conducting a legal search of the defendant's apartment, limited in scope to areas where the ring specified in the warrant might reasonably be found." See *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971).[5]

---

[4] Aside from the items noted above, the inventory of property taken pursuant to the warrant included: "(3) 1 clear plastic bag containing green vegetable matter . . . . (7) miscellaneous personal papers." The Commonwealth did not ask the single justice to report the validity of the judge's order to suppress the "miscellaneous personal papers" and the $134 in cash. We therefore do not reach that issue.

[5] The judge determined that, even if the search went beyond the permissible scope of a search for the diamond ring, the police, once they discovered

On appeal, the defendant does not dispute the judge's determination that there was probable cause to search for the ring. Rather she confines her argument to the inapplicability of the doctrine of "plain view" to a case where the articles found in plain view were themselves described in an invalid clause of a search warrant. The Commonwealth, moreover, concedes that the clause in the warrant permitting a search for heroin is invalid. Having no occasion, therefore, to review the judge's ruling on the validity of the ring and heroin clauses, we face squarely the issue of the effect of a partially tainted search warrant upon the admissibility of evidence seized pursuant to its valid portion, an issue as yet undecided by this court. *Commonwealth* v. *Labelle,* 15 Mass. App. Ct. 175, 181 n.9 (1983).

1. *"Severance" of the warrant.* We note at the outset that the defendant made no claim in her motion to suppress that the search violated rights guaranteed by art. 14 of the Declaration of Rights of the Constitution of the Commonwealth. Thus she may not raise that argument for the first time on appeal. See *Commonwealth* v. *Marchionda,* 385 Mass. 238, 242 (1982); *Commonwealth* v. *Lewis,* 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964). We therefore look only to Federal standards to determine whether the evidence sought to be suppressed was lawfully obtained.

We find ample guidance in the law of other jurisdictions[6] which have held that "the infirmity of part of a warrant requires

---

the heroin, had probable cause for a more extensive search for drugs: "here the police continued their search in good faith reliance upon what they believed was a valid warrant to search for drugs." Because we find that the officers did not exceed the permissible scope of a search for the diamond ring, we do not reach the judge's alternate "good faith" holding.

[6] See, e.g., *United States* v. *Fitzgerald,* 724 F.2d 633 (8th Cir. 1983), cert. denied, 466 U.S. 950 (1984); *United States* v. *Riggs,* 690 F.2d 298 (1st Cir. 1982); *United States* v. *Christine,* 687 F.2d 749 (3d Cir. 1982); *United States* v. *Freeman,* 685 F.2d 942 (5th Cir. 1982); *United States* v. *Cook,* 657 F.2d 730 (5th Cir. 1981); *United States* v. *Jacob,* 657 F.2d 49 (4th Cir. 1981), cert. denied, 455 U.S. 942 (1982); *United States* v. *Espinoza,* 641 F.2d 153 (4th Cir.), cert. denied, 454 U.S. 841 (1981). State courts have reached the same result. See, e.g., *State* v. *Maddasion,* 130 Ariz. 306 (1981); *Aday* v. *Superior Court,* 55 Cal. 2d 789 (1961); *State* v. *Kealoha,* 62 Hawaii 166 (1980); *Palmer* v. *State,* 426

the suppression of evidence seized pursuant to that part of the warrant . . . but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized — on plain-view grounds, for example — during their execution). This approach . . . complies with the requirements of the fourth amendment." *United States* v. *Fitzgerald,* 724 F.2d 633, 637 (8th Cir. 1983). We are persuaded that "it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well. . . . It would be ironic, to say the least, if the efforts of the police to therefore 'advise the court of everything which conceivably might be found in the premises' should result in the warrant being declared invalid in its entirety" (citations omitted). 2 W.R. LaFave, Search and Seizure § 4.6 (f), at 111-112 (1978 & Supp. 1984). Some of the purposes which have been stated in support of the exclusionary rule are the deterrence of unlawful police conduct, the dissociation of the courts from such misconduct, and the preclusion of benefit to the prosecution from unconstitutional police activity. See *United States* v. *Fitzgerald, supra* at 636. Where none of these purposes will be served, rigid adherence to the exclusionary rule only can frustrate the public interest in admitting the evidence obtained. The partial suppression remedy for a partially invalid warrant, we believe, effects a pragmatic balance between the deterrent effect of suppression and the cost to society of excluding probative evidence. See *United States* v. *Christine,* 687 F.2d 749, 757-760 (3d Cir. 1982). We, therefore, join the "weight of authority favor[ing] partial suppression." *United States* v. *Riggs,* 690 F.2d 298, 300 (1st Cir. 1982).

Partial suppression, of course, is not an appropriate remedy in all circumstances. "It is beyond doubt that *all* evidence seized

So. 2d 950 (Ala. Crim. App. 1983); *Norris* v. *State,* 640 P.2d 1374 (Okla. Crim. App. 1982); *Commonwealth* v. *Casuccio,* 308 Pa. Super. 450 (1982); *Sanders* v. *State,* 649 S.W.2d 59 (Tex. Ct. App. 1982); *Walthall* v. *State,* 594 S.W.2d 74 (Tex. Crim. App. 1980); *State* v. *Olson,* 32 Wash. App. 555 (1982).

pursuant to a *general* warrant must be suppressed. The cost to society of sanctioning the use of general warrants — abhorrence for which gave birth to the Fourth Amendment — is intolerable by any measure. No criminal case exists even suggesting the contrary" (emphasis supplied). *United States* v. *Christine, supra* at 758. Severance of the invalid from the valid portions of a warrant is unacceptable where "no portion of the warrant is sufficiently particularized to pass constitutional muster . . . . Otherwise the abuses of a general search would not be prevented" (citation omitted). *United States* v. *Cardwell,* 680 F.2d 75, 78 (9th Cir. 1982). See *Aday* v. *Superior Court,* 55 Cal. 2d 789, 797 (1961). The record in the instant case, however, belies any suggestion that the police detective was given authorization to conduct a general rummaging search of the defendant's apartment. The magistrate specifically authorized him to search for heroin and a diamond ring. While the authorization to search for heroin failed for lack of probable cause, the valid authorization to search for the ring sufficiently limited the officer's discretion so as to withstand constitutional challenge. Contrast *Kinsey* v. *State,* 602 P.2d 240 (Okla. Crim. App. 1979) (warrant authorized search for ten specific items "and other stolen property," latter description insufficient and requires suppression of all items even those named in the warrant). The judge was thus correct in allowing that portion of the warrant to stand.

2. *"Plain view."* Having established that it is constitutionally permissible to admit evidence seized pursuant to the valid portion of a search warrant, we must determine which, if any, of the items recovered in the instant case were legally seized under the valid "diamond ring" clause. The defendant contends that the doctrine of plain view, as elaborated in *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971), is inapplicable "in situations where the police knew what they were looking for, what they might expect to find and in fact *explicitly searched for said items*" (emphasis in original). The plain view exception, she argues, requires that the police come upon the evidence inadvertently; that is, that they were not specifically planning to look for the evidence but fortuitously came across

it in their search for items they were entitled to look for. *Coolidge* v. *New Hampshire, supra* at 469-471. Because the detective and the State troopers fully anticipated the recovery of the heroin and drug paraphernalia, the defendant submits that those items must be suppressed.

We reject this line of reasoning and find that the application of the doctrine of plain view to a search conducted pursuant to a partially valid warrant is ordinarily permissible. See, e.g., *United States* v. *Freeman,* 685 F.2d 942, 953 (5th Cir. 1982); *Commonwealth* v. *Casuccio,* 308 Pa. Super. 450, 467-468 (1982); *State* v. *Noll,* 116 Wis. 2d 443, 446 (1984). The requirement of inadvertent discovery demands that if the police have probable cause to search for an item, and are thus systematically looking for it, they must mention it in their warrant or forfeit its admission in evidence. But "the inadvertence requirement of *Coolidge* [is] particularly ill-suited when applied to items listed in the invalid portion of a severed warrant, for it [is] at odds with the more . . . basic requirement that search warrants describe things to be seized with particularity. The inadvertence requirement applied to items in the invalid portion of a warrant would have the curious effect of penalizing law enforcement officials for including as much detail as possible concerning the object of their search. A police officer with a marginal case for probable cause to search for a given object might well be tempted not to list it in the warrant, although he might then be put in a double bind since *Coolidge* holds . . . that deliberate failure by the officer to list an item he believes there is probable cause to search for is not permitted if he is planning to look for it." *United States* v. *Freeman, supra* at 954 n.7. The proper inquiry, then, is not whether the discovery was inadvertent but whether the items seized in plain view were seized within the scope and intensity of the search permitted under the terms of the valid portions of the warrant. See generally, 2 W.R. LaFave, *supra* § 4.6 (f), at 113.

The police detective and the State troopers were entitled to search for a diamond ring, an item which is "by [its] nature small and easily concealable anywhere." *United States* v. *Freeman, supra* at 953. The search of the defendant's pocket-

book, bureau, medicine chest, and in fact, of her entire apartment would have been well within the scope and intensity authorized by the valid part of the warrant. The ring was never found; thus, the officers' lawful authority continued throughout the duration of the search actually conducted. Because the heroin and drug paraphernalia were in plain view during a permissible search, the motion to suppress those items was properly denied.

It is possible that, in other circumstances, the determination whether items seized in plain view were in fact seized during the execution of the valid portion of a severed warrant may impose an impossibly difficult task upon a trial court. *State* v. *Noll,* 116 Wis. 2d 443, 471 n.1 (1984) (Abrahamson, J., dissenting). It is likewise possible that engrafting the plain view doctrine on the severability rule might allow a police officer to seize an item without an objectively based, articulable suspicion that it is "a fruit, instrumentality, or evidence of a crime." *Id.* at 470. These possibilities, however, are not realized on the facts before us. We conclude that the officers did not exceed the broad scope of the search permitted them under the diamond ring clause of the warrant; and that, despite the lack of probable cause to search for the heroin in the first instance, the officers might certainly have entertained the reasonable, articulable suspicion that the thirty-eight packets of white powder, inter alia, were contraband. See *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 744 (1981) (officer need not have scientific proof that item seized is contraband).

The defendant finally contends that the statements she made at the time of her arrest and search should be suppressed in accordance with *Wong Sun* v. *United States,* 371 U.S. 471 (1963). Having concluded that the search of her apartment did not offend the Fourth Amendment, we hold that her admissions are not the "fruit[s] of the poisonous tree." *Id.* at 488.[7]

---

[7] On appeal the defendant argues that the officers executed the search warrant in bad faith and that the police did not comply with the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436 (1966). The defendant did not raise these issues below and thus these issues were not reported to us. We therefore do not reach them.

The order of the judge denying in part the motion to suppress is affirmed. The case is remanded to the Superior Court for further proceedings.

*So ordered.*