STATE

v.

Michael D. PRATT.

No. 92–542–C.A.

Supreme Court of Rhode Island.

May 13, 1994.

Aaron Weisman, Annie Goldberg (argued), Dept. of Atty. Gen., Providence, for plaintiff.

Richard M. Casparian, Public Defender, Paula Rosen (argued), Asst. Public Defender, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on appeal by Michael D. Pratt (defendant) from a judgment of conviction for possession of over five kilograms of marijuana. The defendant, after a jury trial in Superior Court, was sentenced to twenty years' imprisonment and fined $20,000. The defendant argued on appeal that the trial justice's denial of his motion to suppress all tangible evidence and the denial of the defendant's motion for judgment of acquittal were in error. The defendant also maintained that the trial justice committed reversible error by admitting irrelevant and prejudicial evidence at trial. For the reasons stated herein, we affirm the conviction.

## I

### FACTS

In June 1988 defendant became the target of a multijurisdictional undercover police investigation which, *inter alia*, concentrated on illegal drug activity in Newport, Rhode Island. Sergeant Gregory Ursini (Ursini) of the Bristol police department, a member of the Attorney General's task force on narcotics, assumed the *alias* Greg Manzi and befriended defendant. Ursini met defendant by enrolling in the Newport Flight School where defendant was an instructor. Ursini and defendant became friends, and when Ursini stated that he was searching for a place

to live, defendant offered Ursini a room in his apartment. Shortly before Ursini moved in, defendant informed Ursini that he intended to install three surveillance cameras at the apartment to keep track of people entering and leaving the apartment. The defendant also told Ursini that he had a loaded mini–14 semiautomatic rifle in his room in the event anyone proceeded past the surveillance camera.

The defendant and Ursini soon became business associates when, in December 1988, defendant offered Ursini an opportunity to realize at least a $1,200 profit within one week on a $6,000 investment. According to Ursini, defendant proposed the purchase of twenty-two pounds of marijuana from a contact in West Palm Beach, Florida, with whom defendant had previously dealt. The defendant informed Ursini that this was a safe investment that had netted defendant profits of $3,000 to $6,000 on several earlier occasions. On December 13, 1988, the roommates traveled to West Palm Beach and met with John Icart (Icart), defendant's contact, who sold Ursini and defendant twenty-nine pounds of commercial marijuana. The defendant, although he attempted to obtain cocaine from Icart, did not make a purchase at that time.

Upon returning to Rhode Island, defendant and Ursini packaged the drugs into one-pound bags and began looking for potential buyers. By May 1989 the roommates had moved the marijuana several times and stored it in various locations, including in the garage of their apartment building located at 305 Corey Lane, Middletown. On or about May 15, 1989, defendant warned Ursini about a prospective drug raid in Middletown. Under the pretense of moving the drugs to a safer location, Ursini put the remaining marijuana, approximately twenty-four pounds, into the trunk of his car and turned it over to the police.

During their eleven-month acquaintance, the pair's business discussions did not solely focus on the December marijuana purchase. On several occasions between December and May, defendant suggested to Ursini the possibility of purchasing cocaine. Although the pair never effectuated a cocaine purchase,

defendant made it clear to Ursini that he was conducting other transactions of which Ursini was not a part. As evidence of such transactions, Ursini knew of several meetings between defendant and suspected drug dealers at both the Newport Flight School and the apartment. The defendant never involved Ursini in these meetings; rather, Ursini would always be asked to leave the room. In April 1989, in order to bolster his own credibility, Ursini arranged a mock cocaine transaction between himself and an FBI agent. At Ursini's request, defendant flew Ursini and the cocaine to a prearranged location. Ursini paid defendant $550 for the transportation.

By mid-May 1989, although defendant had not included Ursini in any of the alleged cocaine transactions, the police decided to conclude the investigation. After Ursini obtained wiretaps of defendant discussing various drug transactions, the police obtained an arrest warrant and search warrants for defendant's apartment and the Newport Flight School. The apartment warrant authorized a search for:

> "Marijuana, cocaine and drug paraphernalia. Electronic surveillance/monitoring equipment. All personal and business documents and papers and other documents pertaining to Newport Flight School. One mini–14 automatic weapon."

On May 25, 1989, the FBI and the Newport police arrested defendant and executed the search warrants. The defendant was charged with possession of over five kilograms of marijuana, possession of marijuana with intent to deliver, and delivery of marijuana. A judgment of acquittal with regard to the charge of delivery of marijuana was entered on May 28, 1991. A jury subsequently found defendant guilty of possession of over five kilograms of marijuana and possession with intent to deliver. However, prior to sentencing, the trial justice dismissed the charge of possession with intent to deliver. The defendant was sentenced to twenty years' imprisonment and fined $20,000 for possession of over five kilograms of marijuana. In response, defendant filed the instant appeal pursuant to G.L.1956 (1985 Reenact-

ment) § 9–24–32 and raised essentially four issues on appeal.

## II

## SUPPRESSION OF EVIDENCE

The defendant first argued that the trial justice erred when he denied defendant's motion to suppress all tangible evidence. The defendant alleged, as the first of several grounds to justify suppression of evidence, that the affidavit in support of the apartment search warrant did not establish probable cause to search the apartment for marijuana or drug paraphernalia. The defendant also maintained that the general, exploratory nature of the search violated his constitutional rights under the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution. Finally, defendant challenged application of the severability doctrine and asserted that the entire search warrant should have been declared invalid and the evidence seized thereunder should have been suppressed.

■ The Fourth Amendment and article 1, section 6, forbid the issuance of a search warrant without a showing of probable cause. *State v. Riccio,* 551 A.2d 1183, 1185 (R.I. 1988); *State v. Ricci,* 472 A.2d 291, 294 (R.I. 1984). A search warrant must be supported by oath or affirmation and must describe with particularity the place to be searched and the persons or things to be seized. *Riccio,* 551 A.2d at 1185.

In consideration of defendant's pretrial motion to suppress all tangible evidence, the trial justice evaluated each element contained in the apartment search warrant in determining the constitutionality of the issuance of the search warrant. The trial justice concluded that there had been no probable cause to support the contention that cocaine would have been found on the premises. The trial justice also concluded that the warrant had not been sufficiently particularized with respect to the seizure of defendant's business and personal papers. Thus, the trial justice granted the motion to suppress all evidence seized pursuant to those portions of the warrant. The trial justice, however, denied the motion as to the remaining evidence, and concluded that there had been probable cause to search for marijuana and that the remaining evidence had been properly seized under the plain-view doctrine. We concur with the trial justice's conclusions.

### A. PROBABLE CAUSE TO ISSUE SEARCH WARRANT

On appeal defendant alleged that the affidavit in support of the apartment search warrant lacked sufficient facts to establish probable cause that marijuana and drug paraphernalia would be found in his apartment. We disagree.

■ It is axiomatic that the quantum of proof necessary to establish probable cause is significantly different from the degree needed to establish guilt. *Ricci,* 472 A.2d at 296. The probable-cause standard requires "only the probability, and not a prima facie showing, of criminal activity." *State v. Baldoni,* 609 A.2d 219, 220 (R.I.1992); *State v. Doukales,* 111 R.I. 443, 449, 303 A.2d 769, 773 (1973). This standard, however, does require a showing of more than a mere suspicion that criminal activity is taking place. *Marderosian v. United States,* 337 F.2d 759, 760 (1st Cir.1964), *cert. denied,* 380 U.S. 971, 85 S.Ct. 1328, 14 L.Ed.2d 268 (1965). The issuing magistrate, in applying the totality-of-the-circumstances test, "must make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit" in question, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). *Accord State v. Pacheco,* 481 A.2d 1009, 1020 (R.I. 1984); *Ricci,* 472 A.2d at 295. Although the existence of probable cause must be found within the "four corners" of an affidavit submitted in support of the issuance of a warrant, *State v. Joseph,* 114 R.I. 596, 603, 337 A.2d 523, 527 (1975), a judicial officer may draw reasonable inferences from the affidavit in order to reach a determination of probable cause, *State v. Kowal,* 423 A.2d 1380, 1383 (R.I.1980).

■ In reviewing the propriety of a search warrant, the reviewing court's duty " 'is sim-

ply to ensure that the magistrate had a "substantial basis for * * * conclud[ing]" that probable cause existed.'" *Ricci*, 472 A.2d at 295. We have stated that an issuing magistrate's determination of probable cause should be afforded great deference by the reviewing court. *Baldoni*, 609 A.2d at 220.

■ With these principles in mind, we are of the opinion that there was sufficient probable cause to conclude that marijuana and drug paraphernalia could be found in defendant's apartment. The affidavit submitted in support of the apartment search warrant described defendant's purchase of approximately twenty-nine pounds of marijuana in December 1988 and the subsequent forfeiture of approximately twenty-six pounds by Ursini to the Newport police department.[1] The affidavit further expressed the police department's belief that defendant "had given or sold those [missing] three pounds to person or persons unknown." The defendant alleged that this statement demonstrated that defendant was no longer in possession of any of the marijuana originally purchased in December 1988. Thus, defendant argued, the affidavit could not be used to justify a search warrant, *State v. Tella*, 113 R.I. 303, 306–07, 321 A.2d 87, 89 (1974), and, therefore, the search warrant was invalid.

In his contention, defendant excised the statement from the entire affidavit and argued that it led inescapably to the conclusion that defendant could no longer have been in possession of the marijuana purchased in December 1988. We are of the opinion, however, that when the statement is read in the context of the entire affidavit, the affidavit establishes probable cause to believe that defendant had marijuana in his possession.

We begin with the fact that, in contrast to the rest of the affidavit in which the affiant, with particularity, stated knowledge of defen-

dant's activities (for example, "[defendant] moved [the drugs] into a green 'bug style' Volkswagon"), the affiant in this instance espoused merely a "belief" that defendant sold or gave away the drugs. The affidavit is devoid of any facts or other evidence to support the conclusion that defendant had actually sold the marijuana. Given the lack of evidence in support of a possible sale of the marijuana, the issuing magistrate could reasonably conclude that defendant had not sold or given away the drugs but in fact still possessed them in his home.

Furthermore, the affidavit clearly provided ample probable cause to believe that marijuana would have been found in defendant's apartment. The affidavit established that defendant had access to the marijuana. The direct knowledge of Ursini, expressed in the affidavit, supported the conclusion that defendant stored marijuana in his bedroom. We are of the opinion that one could reasonably infer in regard to the location of the missing drugs that defendant still had them in his possession. Thus, we conclude that there was a substantial basis on which the magistrate, reading the four corners of the affidavit and drawing all reasonable inferences therefrom, could find sufficient probable cause to issue the apartment search warrant.

## B. PLAIN VIEW

We now turn to defendant's declaration that the evidence not listed in the warrant but nevertheless seized during the search should have been suppressed. According to defendant, the police exceeded their authority when they conducted, in essence, a general search and seized items not described in the warrant. The defendant contended that the trial justice erred when he relied on the plain-view doctrine as justification for seizing the additional items.

---

1. Ursini testified that he weighed the marijuana in Florida and determined that the package weighed thirty-one pounds. Upon their return to Rhode Island, however, defendant and Ursini repackaged the marijuana into one-pound bags and discovered that their actual net purchase amounted to approximately twenty-nine pounds. Ursini attributed the two-pound discrepancy to the heavy electrical tape used to package the marijuana in Florida.

Shortly after their return to Rhode Island, Ursini turned over two pounds of marijuana to the Newport police under the pretense of making a sale. This initial forfeiture, coupled with the subsequent forfeiture of twenty-four pounds on May 16, 1989, resulted in the police's being in possession of twenty-six pounds at the time the search warrant was executed.

■ It is well settled that general searches and seizures that consist "of a general, exploratory rummaging in a person's belongings" are prohibited under the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971); *Kowal,* 423 A.2d at 1382. General searches are precluded by the requirement that no warrant shall issue unless it "particularly describe[s] the place to be searched and the persons or things to be seized." *Riccio,* 551 A.2d at 1185. Even so, the absence of a particular item from a validly issued warrant does not necessarily foreclose its seizure. Numerous, commonsense exceptions to the specification of items in a warrant have been recognized. *Texas v. Brown,* 460 U.S. 730, 735–37, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502, 509–10 (1983). Often those exceptions to the warrant requirement are subsumed in the plain-view doctrine.

■ The plain-view doctrine allows seizure of evidence that is openly on display when an officer, who is lawfully in a position to see the evidence and to have lawful access to it, immediately recognizes that the object is evidence of criminality.[2] *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 123 (1990). *Accord Brown,* 460 U.S. at 737, 103 S.Ct. at 1540–41, 75 L.Ed.2d at 510; *Coolidge,* 403 U.S. at 464–73, 91 S.Ct. at 2037–42, 29 L.Ed.2d at 581–87; *State v. Cobb,* 494 A.2d 1182, 1184–85 (R.I. 1985); *State v. Eiseman,* 461 A.2d 369, 379 (R.I.1983). The defendant contended that, while conducting a general search, the officers, relying on the plain-view doctrine, seized items—in particular the police scanner, radio guide, and *Fortune* magazine—that did not constitute evidence of activity whose incriminating nature was immediately apparent.

■ As a preliminary matter, we reject defendant's contention that the officers' search amounted to a general, exploratory search. We are satisfied that the warrant was sufficiently particularized to survive

Fourth Amendment scrutiny, and in our review of the execution of the warrant, we have found no evidence that the officers exercised a general search.

■ Turning to defendant's assertion that the items could not be seized under the plain-view doctrine because their incriminating nature was not "immediately apparent" to the officers, we begin with a review of the immediately-apparent requirement. In *Texas v. Brown,* the Supreme Court was critical of the immediately-apparent requirement that defendant has relied upon. The phrase "immediately apparent," in the Court's view, "was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty" is necessary prior to seizing the item. *Brown,* 460 U.S. at 741, 103 S.Ct. at 1543, 75 L.Ed.2d at 513. The Court, in *Brown,* delineated that this prong of the plain-view doctrine can be satisfied whenever " '*there is probable cause to associate the property [in plain view] with criminal activity.*' " *Id.* at 741–42, 103 S.Ct. at 1543, 75 L.Ed.2d at 513. *Accord Cobb,* 494 A.2d at 1185. Probable cause, in a plain-view seizure case, "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' * * * that certain items may be * * * useful as evidence of a crime." *Brown,* 460 U.S. at 742, 103 S.Ct. at 1543, 75 L.Ed.2d at 514.

■ In the instant case, where the police were lawfully in defendant's apartment by virtue of a lawfully executed search warrant, we are of the opinion that the items that defendant claimed were not incriminating may reasonably be construed as evidence of crime. The officers were aware that defendant was a suspected drug dealer who allegedly used his position at the Newport Flight School to transport drugs. Armed with this premise, an officer of reasonable caution could justifiably conclude that a magazine found on defendant's nightstand, which periodical included an article describing the inside world of the drug trade and the challenges of stopping drug trafficking, would be

---

**2.** In *Horton v. California,* 496 U.S. 128, 141, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112, 126 (1990), the Supreme Court rejected the often-cited requirement that the police officer discover the evidence inadvertently.

useful as evidence of a crime. We are also satisfied that there was probable cause for the officers to associate the police scanner and the radio guide with criminal activity. In light of the accusation that defendant was involved in drug trafficking, it was reasonable for the officers to suspect that these otherwise unincriminating objects were assisting defendant in avoiding police detection while carrying on illicit trades. Thus, the items were properly seized under the plain-view doctrine, and the trial justice did not err in denying defendant's motion to suppress these items.

## C. SEVERANCE DOCTRINE

Finally, defendant maintained that in regard to the tangible evidence, the trial justice should have declared the entire search warrant unlawful and should have suppressed all items seized thereunder. Because the invalid portions of the warrant were redacted and the seizure of the remaining evidence was upheld, defendant submitted that the trial justice relied erroneously on *State v. Tucker*, 133 N.H. 204, 575 A.2d 810 (1990).

 Although never expressly adopted by this court, at least nine federal circuit courts and several state courts have adopted the severance doctrine.[3] The severance doctrine permits a court to redact invalid portions from a warrant and to uphold the seizures made pursuant to the valid portions. *United States v. Morris*, 977 F.2d 677, 682 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1588, 123 L.Ed.2d 155 (1993). With this opinion we expressly adopt the severance doctrine.

 The rationale behind the doctrine is that rigid adherence to the exclusionary rule

would not always serve a valid purpose. Rather, "the social gains of deterring unconstitutional police conduct by suppressing *all* evidence seized pursuant to a partially invalid warrant often are outweighed by the social costs occasioned by such an across the board ruling." *United States v. George*, 975 F.2d 72, 79 (2d Cir.1992).

Nonetheless, in order to apply the severance doctrine, the valid unredacted portions of the warrant must be sufficiently specific and particular to survive Fourth Amendment scrutiny. *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir.1986). Moreover, the valid portions may not comprise " 'a relatively insignificant part' of an otherwise invalid search." *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 858 (9th Cir.1991). Thus, specific guidelines ensure that the Fourth Amendment guarantees are adequately protected. *See George*, 975 F.2d at 79.

 In the instant case, we conclude that the trial justice correctly applied the doctrine by carving out the invalid portions of the search warrant and suppressing the items seized pursuant to those constitutionally infirm portions of the warrant. We find no merit to defendant's contention that the constitutionally valid portions of the search warrant amounted to an insignificant part of an otherwise invalid warrant. To the contrary, the invalid portions—that is, the authority to search for cocaine and to seize all business and personal records—were the insignificant portions of an otherwise valid warrant. The lawful portions of the warrant authorized a search for marijuana, drug paraphernalia, an automatic weapon, and electronic surveillance/monitoring equipment, all of which

---

**3.** *See, e.g., United States v. Brown*, 984 F.2d 1074, 1078 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. George*, 975 F.2d 72, 79 (2d Cir.1992); *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991), *and cert. denied*, —— U.S. ——, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992); *United States v. Holzman*, 871 F.2d 1496, 1510 (9th Cir.1989); *United States v. Fitzgerald*, 724 F.2d 633, 636–37 (8th Cir.), *rev'g in part on reh'g* 705 F.2d 293 (1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984); *United States v. Riggs*, 690 F.2d 298, 300 (1st Cir.1982);

*United States v. Christine*, 687 F.2d 749, 759–60 (3d Cir.1982); *In re Search Warrant Dated July 4, 1977*, 667 F.2d 117, 130–33 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *United States v. Cook*, 657 F.2d 730, 734–35 (5th Cir.1981); *Aday v. Superior Court of Alameda County*, 55 Cal.2d 789, 797, 362 P.2d 47, 52, 13 Cal.Rptr. 415, 420 (1961); *Commonwealth v. Lett*, 393 Mass. 141, 144–46, 470 N.E.2d 110, 113 (1984); *State v. Warren*, 226 Neb. 810, 812–13, 415 N.W.2d 152, 154 (1987); *State v. Tucker*, 133 N.H. 204, 209–10, 575 A.2d 810, 814 (1990).

were supported by probable cause sufficient to believe that they would aid in a conviction. *See Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967).

■ We also reject defendant's contention that the doctrine of severability does not apply to evidence seized that was not specifically described in the warrant. The defendant's misplaced reliance on *United States v. Apker*, 705 F.2d 293 (8th Cir.), *rev'd in part on reh'g*, 724 F.2d 633 (8th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229, *and cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984), and *Spilotro*, 800 F.2d at 968, does not support his assertion that items seized in plain view during a search pursuant to a partially defective warrant must be suppressed. Although *Apker*, as originally decided by a three-judge panel of the Eighth Circuit, did reject the adoption of a "plain view-severance approach," 705 F.2d at 307, the Eighth Circuit subsequently granted a rehearing *en banc* to reconsider the issue. *United States v. Fitzgerald*, 724 F.2d 633, 635 (8th Cir.), *rev'g in part on reh'g* 705 F.2d 293 (8th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984). In *Fitzgerald*, the full court reversed the *Apker* three-judge panel and found that "[b]ecause the warrants as redacted were valid, the police possessed authority under the 'plain view' doctrine * * * to seize any apparent contraband or evidence of a crime they might inadvertently find while executing the valid portions of the warrant." 724 F.2d at 636.

Neither does the Ninth Circuit's opinion in *Spilotro* lend support to defendant's position. In that case the court never reached the issue of whether the plain-view doctrine could justify seizure under a redacted warrant because the court found no basis to sever the warrant. 800 F.2d at 967. Thus, because the officers were executing a wholly invalid warrant, they were not lawfully in a place to justify seizure of items in plain view. *Id.* at 968. Furthermore, subsequent to their opinion in *Spilotro*, the Ninth Circuit applied the plain-view-severance approach and found that, despite a partially defective warrant, the officers were justified in seizing items

under the plain-view doctrine. *United States v. Holzman*, 871 F.2d 1496, 1512–13 (9th Cir.1989).

In fact, our research has revealed that in addition to the Ninth Circuit, various other circuit and state courts have found sufficient bases for allowing the admission of evidence seized from plain view during the execution of a partially defective warrant. *See, e.g., United States v. Brown*, 984 F.2d 1074, 1078 (10th Cir.), *cert. denied*, — U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *George*, 975 F.2d at 79–80; *Holzman*, 871 F.2d at 1512–13; *Commonwealth v. Lett*, 393 Mass. 141, 146–48, 470 N.E.2d 110, 114–15 (1984). Such courts have reasoned that if officers were legally upon the premises in any set of circumstances, including by virtue of a partially invalid warrant, the seizure of articles found in plain view can be upheld. We concur with this reasoning.

■ The proper inquiry in such situations thus becomes whether the officers came upon the item while "they were in a place where the *redacted* warrant * * * authorized them to be * * * [and whether] the item seized [was] discovered before the authority of the officers[ ] to be on the premises has expired." *George*, 975 F.2d at 80.

In the instant case, the officers had authorization, *inter alia*, to search for marijuana and drug paraphernalia. The items seized in plain view—including the *Fortune* magazine, programmable scanner, and radio call guide—were discovered in and around the bedroom, in places where marijuana and/or drug paraphernalia justifiably could be found. At the time these items were seized, the authority of the police to be on the premises had not expired. *See id.* Accordingly, seizure of these items was proper under the plain-view doctrine during execution of the redacted warrant.

### III

### RELEVANCY

In addition to contesting the seizure of the police scanner, radio guide, and *Fortune* magazine, defendant also challenged their admission and the admission of the three-

screen Panasonic video monitor into evidence on relevancy grounds. Additionally, defendant contested the relevancy and prejudicial impact of admitting the semiautomatic weapon and ammunition into evidence.

■ "Relevant evidence [is] * * * evidence that tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without such evidence." *State v. Houde*, 596 A.2d 330, 333 (R.I.1991). "All relevant evidence is admissible," Rule 402 of the Rhode Island Rules of Evidence, unless the probative value of such evidence is found to be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," Rule 403. The ultimate determination of the relevancy and effect of evidence is within the sound discretion of the trial justice. *State v. Neri*, 593 A.2d 953, 956 (R.I.1991). Absent a showing of abuse of this discretion, this court will not disturb a trial justice's exercise of discretion. *Id.*

■ In the instant case, defendant was charged with possession of a specific amount of marijuana and possession with intent to deliver marijuana. The trial justice found that the semiautomatic weapon, found fully loaded in defendant's bedroom closet, was probative of the location of the marijuana, of the activity of defendant, and as well of his state of mind in feeling more secure and comfortable in bringing marijuana into the apartment. Likewise, the trial court found that the electronic equipment tended to show that defendant felt the need for security in his living quarters in order to bring in a substantial supply of marijuana. With regard to the *Fortune* magazine that contained an article on bringing drugs into the United States, the court found the article relevant to the charges and dismissed its prejudicial effect as "infinitesimal."

After examining the testimony and the record, we are of the opinion that admitting this evidence could not be deemed an abuse of discretion on the part of the trial justice. Although, as noted, these items, by themselves, appear to be innocuous objects, when viewed in light of the charge of possession of marijuana and possession with intent to deliver, their relevance becomes apparent.

■ One element of the charge of possession with intent to deliver is defendant's state of mind as evidenced by his intent regarding the marijuana in his possession. We are of the opinion that a loaded semiautomatic weapon, an article on drug trafficking, and electronic surveillance equipment tended to make the existence of an intent to deliver "more * * * probable than it would be without such evidence." *Houde*, 596 A.2d at 333. The fact that these items were legally owned does not affect their relevancy. Rather, status of ownership is a factor to be considered by the jury in weighing the evidence.

■ We also agree with the trial justice that the introduction of the semiautomatic weapon into evidence was not overly prejudicial. Unlike the facts in *State v. Brash*, 512 A.2d 1375, 1383 (R.I.1986), where we found that the relevance and materiality of firearms introduced at trial rested on shaky ground, the weapon in the instant case was highly probative of the charges against defendant. *See State v. Alamont*, 577 A.2d 665, 668 (R.I.1990) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 106, 100 S.Ct. 338, 350, 62 L.Ed.2d 238, 255 (1979)) ("[i]n the narcotics business, 'firearms are as much "tools of the trade" as are most commonly recognized articles of narcotics paraphernalia' "). Furthermore, *Brash* is distinguishable from the instant case by the fact that the prejudicial impact of the weapons in *Brash* stemmed in part from "the sheer number and variety of the guns" introduced at trial. 512 A.2d at 1383. In the instant case, however, only one gun and a photograph of the weapon, in the position discovered in defendant's apartment, were introduced. "Unless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it." *Wells v. Uvex Winter Optical Inc.*, 635 A.2d 1188, 1193 (R.I.1994). Given these factors, we hold that the slight prejudicial effect of the weapon was outweighed by the probative value of the item.

## IV

## EVIDENCE OF "OTHER BAD ACTS"

We now turn to defendant's allegation that the trial justice committed reversible error

by allowing evidence of defendant's alleged cocaine trafficking in violation of Rule 404(b) of the Rhode Island Rules of Evidence.

It is well settled that evidence of past, uncharged criminal behavior of an accused is generally inadmissible in a criminal trial to prove a defendant's propensity to commit the crime charged. *State v. Brigham*, 638 A.2d 1043, 1044–45 (R.I.1994); *State v. Colangelo*, 55 R.I. 170, 173, 179 A. 147, 149 (1935). The prejudicial effect of such evidence has been traditionally viewed as outweighing its probative value by acting to predispose jurors to believe a defendant's guilt. *State v. Colvin*, 425 A.2d 508, 511 (R.I.1981). Such evidence also presents the risk of the accused's being convicted for a crime other than that charged. *State v. Jalette*, 119 R.I. 614, 624, 382 A.2d 526, 531–32 (1978).

■ Despite these concerns, numerous exceptions to the exclusionary rule have been recognized and set forth in Rule 404(b). In particular, evidence of other acts may be relevant and admissible if it is "interwoven with" the offense charged, *State v. Brown*, 626 A.2d 228, 233 (R.I.1993), or if it is offered to prove an accused's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." Rule 404(b). In order to protect against the concerns enumerated above, the trial justice must carefully weigh the probative value of the evidence against the danger of unfair prejudice when evidence is offered under one of these exceptions. If the probative value is found to outweigh the prejudicial effect, the trial justice must offer " 'a specific instruction [to the jury] as to the limited purpose for which the evidence is being introduced.' " *State v. Chartier*, 619 A.2d 1119, 1123 (R.I. 1993).

■ In the instant case, Ursini wore a "body wire" that recorded defendant discussing possible cocaine transactions. In addition to the introduction of two of these tape recordings, the state offered Ursini's version of untaped cocaine conversations with defendant and testimony regarding a mock cocaine transaction between Ursini and an FBI agent. The state also offered Icart's testimony relating to the cocaine deals he had conducted with defendant prior to the December

1988 marijuana sale. A bottle of inositol, found in the trunk of defendant's car, was also introduced at trial. Detective George R. Hayes testified that inositol is a substance commonly used to "cut" cocaine powder. The defendant maintained that the prejudicial impact of this cocaine evidence, balanced against its probative value, was "undeniably great." According to defendant, the prejudicial effect of this evidence was embodied in the perception that cocaine dealers are more a threat to society than marijuana dealers. Additionally, defendant asserted that the overwhelming amount of cocaine evidence allowed at trial essentially "eclipsed the actual charges against [him]." We disagree.

As the trial justice correctly noted, evidence of alleged cocaine trafficking has the inescapable effect of causing some prejudice to a defendant. But in determining the admissibility of the evidence, the proper inquiry goes beyond the evaluation of any prejudice to the task of weighing the *probative* value of the evidence against its prejudicial effect. *Brown*, 626 A.2d at 233. "It is only when the evidence 'unfairly' or 'unduly' inflames the jury that the trial justice should exclude this evidence." *Id.* While we agree that evidence of defendant's alleged cocaine involvement may have been prejudicial to defendant, we are of the opinion that the probative value of this evidence outweighed its prejudicial effect.

The defendant in the instant case was charged, *inter alia*, with possession of marijuana and possession with intent to deliver marijuana. The evidence now complained of portrayed defendant as discussing his need for money, his desire to repay Ursini for the December marijuana purchase, and his proposed means of obtaining the money—through the sale of cocaine. Beginning with his opening statement to the jury and throughout the trial, defendant portrayed himself as an unwitting participant in activities instigated by undercover officers intent on implicating him by any means necessary. At trial, however, defendant refrained from calling his theory entrapment because such a defense automatically puts at issue defendant's predisposition to commit the crime charged. *State v. Jones*, 416 A.2d 676, 679

(R.I.1980). Nevertheless, at trial defendant argued that the marijuana was purchased and owned by Ursini and thus Ursini, not defendant, was in possession of the contraband. The "cocaine evidence," *inter alia*, demonstrated defendant's intent to repay Ursini for the marijuana and thus was directly related to defendant's possession of the marijuana. In addition, the evidence established defendant's pattern of purchasing large quantities of illegal drugs from contacts outside the state and transporting the drugs into Rhode Island for resale. Thus the evidence complained of also provided proof of defendant's common scheme or plan to possess and sell drugs. The evidence, therefore, related directly to his plan to traffic marijuana and was highly probative of the charge of possession of marijuana and possession with intent to deliver.

Given the high probative value of this evidence, we are of the opinion that its prejudicial impact was outweighed, and thus the evidence was admissible. The trial justice carefully evaluated the evidence prior to its admission and properly prevented the state from "crossing the line." Additionally, pursuant to our mandate in *Jalette*, 119 R.I. at 625, 382 A.2d at 532, the trial justice gave proper instructions to the jury on the limited use of the cocaine evidence. Because the trial justice reiterated the cautionary instruction several times during the trial, defendant argued that the repetitions in fact had the effect of calling attention to the evidence. We decline to accept this objection and conclude that the trial justice's instructions were appropriate, given the duration of the trial—over eight days—and the length of the transcript—1,400 pages. Consequently, the instruction was curative, not prejudicial.

## V

### JUDGMENT OF ACQUITTAL

In the final issue raised on appeal, defendant challenged the trial justice's denial of his motion for a judgment of acquittal. In addressing this argument, defendant relied on Pennsylvania case law for the proposition that the police officers' conduct amounted to "entrapment as a matter of law." According to defendant, this entrapment occurred when Ursini "ingratiated himself" with defendant and used his friendship with defendant to transport commercial marijuana to Rhode Island from Florida. Such inducement and entrapment, in defendant's view, amounted to outrageous conduct that violated his right to due process. We disagree. *See United States v. Matiz*, 14 F.3d 79, 82 (1st Cir.1994).

We begin with the premise that, in reviewing a denial of a motion for judgment of acquittal, we must view all the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses. *State v. Caruolo*, 524 A.2d 575, 581 (R.I.1987). In so doing, we discover that although Ursini supplied the money to purchase marijuana in Florida, it was defendant who first suggested purchasing drugs. It was also defendant who made the travel arrangements and the initial contact with Icart in Florida. Further, defendant also contracted for the purchase of marijuana, delivered the money to Icart, and, after delivery by Icart, brought Ursini to see the marijuana.

"The outrageousness * * * of a police officer's actions can only be evaluated by taking into account the totality of the relevant circumstances." *United States v. Santana*, 6 F.3d 1, 7 (1st Cir.1993). In reviewing the circumstances of the instant case, we are of the opinion that the police conduct was not "outrageous." It is well settled that the government may use undercover officers to enforce the law. *E.g., Jacobson v. United States*, —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174, 184 (1992). Indeed, "in these modern times with advanced technology and transportation facilities readily available to criminals, drug conspiracies * * * are extremely difficult to penetrate and therefore enforcement ingenuity must be encouraged and greater government involvement allowed." *Matiz*, 14 F.3d at 82. We agree with the trial justice that, after assuming the alias and befriending defendant, Ursini did nothing that could reasonably be characterized as "outrageous" conduct.

We also reject the defendant's assertion that Ursini's actions amounted to "entrapment as a matter of law." During trial,

defense counsel refrained from asserting the traditional affirmative defense of entrapment for fear of opening the door to evidence of the defendant's predisposition to commit the crime charged. *See State v. DeWolfe,* 121 R.I. 676, 684, 402 A.2d 740, 744 (1979). Rather, the defendant sought to have the trial justice recognize "not a factual defense of entrapment, but entrapment, per se * * * [which] has nothing to do with predisposition." We reject the defendant's attempt to create such a new theory of defense. Our holding in *Jones,* 416 A.2d at 684, makes clear that entrapment, as a matter of law, occurs only "[w]hen the defendant introduces sufficient evidence of inducement to raise the question of entrapment but the state adduces no evidence of predisposition in rebuttal."

Accordingly, for the reasons stated herein, the defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.